```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------X
```

UNITED STATES,

              **MEMORANDUM & ORDER**

 -against-           10-CR-277-4(KAM)

JERMAN VERDUGO,

      Defendant.

```
-------------------------------X
```
**MATSUMOTO, United States District Judge**:

   On November 30, 2011, defendant Jerman Verdugo pled guilty to Count Four of the Fourth Superseding Indictment, which charged that, on or about December 22, 2009, Mr. Verdugo, with others, knowingly and intentionally transported stolen property worth $5,000 or more, in violation of 18 U.S.C. § 2314.  Mr. Verdugo's sentence, imposed on March 5, 2014, included a $159,580.36 restitution obligation to the victims of the December 22, 2009 robbery.  Of this restitution amount, $117,532.69 was intended to compensate the victims for jewelry stolen from the victims' Brooklyn home on December 22, 2009. (J. of Conviction at 4, ECF No. 259.)  The remaining $42,047.67 is the value of other property stolen during the December 22, 2009 robbery.  (*Id.*)

   Because defendant disputed the restitution amount at sentencing, the court permitted supplemental briefing on this

issue.  Presently before the court is defendant's motion to amend the restitution order.  (*See* Def. Mot., ECF No. 263; Gov. Opp., ECF No. 266; Def. Reply, ECF No. 267.)  Specifically, Mr. Verdugo contends that the government has not adequately proven the monetary value of the stolen jewelry Mr. Verdugo transported and, therefore, that Mr. Verdugo's restitution amount should be reduced.  Mr. Verdugo does not, however, contest that he is responsible for paying the victims restitution for the other property worth $42,047.67.

The Mandatory Victims Restitution Act (MVRA) requires that restitution be paid to victims for, *inter alia*, offenses against property and any offense "in which an identifiable victim has suffered a . . . pecuniary loss."  18 U.S.C. § 3663A(c).  "The purpose of the MVRA 'is to make victims of crime whole, to fully compensate these victims for their losses and to restore the victims to their original state of well-being.'"  *United States v. Maynard*, 743 F.3d 374, 377-78 (2d Cir. 2014) (quoting *United States v. Boccagna*, 450 F.3d 107, 115 (2d Cir. 2006)).  Because the statute is intended to be compensatory rather than punitive, "only a victim's 'actual loss' [may be ordered as restitution], not losses that are hypothetical or speculative."  *Id.* (citing *United States v. Gushlak*, 728 F.3d 184, 195 (2d Cir. 2013)).  Moreover, restitution may only be ordered in connection with "the conduct

composing the offense of conviction." *United States v. Silkowski*, 32 F.3d 682, 689 (2d Cir. 1994). "Any dispute as to the proper amount or type of restitution [must] be resolved by the court by the preponderance of the evidence." 18 U.S.C. § 3664(e).

Defendant argues that the government has not proven by a preponderance of the evidence that the jewelry transported by Mr. Verdugo had a value of $117,532.69. He requests that the restitution for the jewelry be limited to $11,025, or the homeowners' insurance policy limit. (Def. Mot. at 3.) The following evidence is before the court regarding the value of the jewelry taken from the victims' home on December 22, 2009: 1) a document prepared by the insurance claims adjuster and produced by the government on August 9, 2011, listing "Scheduled Misc. Jewelry" as having a claimed value of $117,532.69 and a policy limit of $11,025 (Gov. Ltr. Ex. 1); 2) a list, prepared by the victims and also produced by the government on August 9, 2011, of stolen items without an indication of their value (Gov. Ltr. Ex. 2); and 3) an additional inventory prepared by the victims following Mr. Verdugo's sentencing and produced by the government on March 26, 2014, which places a value of $131,433.08 on the jewelry stolen (Gov. Ltr. Ex. 3). The government notes that some of the jewelry listed in its Exhibit 2 is not listed in Exhibit 3 and that, therefore, the

3

$131,433.08 figure may be an undervaluing of the total jewelry stolen. (Gov. Ltr. at 2.) The government nonetheless requests that the restitution amount imposed at sentencing remain the same.

In light of this evidence, the government has satisfied its burden to establish by a preponderance of the evidence the value of the jewelry stolen by Mr. Verdugo's co-defendants and transported by Mr. Verdugo. Although the $117,532.69 figure is likely an estimate by the homeowners, the MVRA does not prohibit such estimates. *See United States v. Gushlak*, No. 03-CR-833, 2011 WL 3159170, at *3 (E.D.N.Y. July 26, 2011) (quoting *United States v. Germosen*, 139 F.3d 120, 129, 130 (2d Cir. 1998)) ("[T]he loss need not be determined with precision and [] the court need only make a reasonable estimate of the loss, given the available information."); *United States v. Ageloff*, 809 F. Supp. 2d 89, 97 (E.D.N.Y. 2011) (citing *United States v. Catoggio*, 326 F.3d 323, 329 (2d Cir. 2003)) ("The final restitution figure must correspond to all actually ascertainable losses, but where it is impossible to determine the precise amount, a reasonable estimate will suffice") (internal quotation marks omitted). Moreover, information from victims is an acceptable way for the government or Probation Department to arrive at a proposed restitution figure. *See* 18 U.S.C. §§ 3664(d)(1), (d)(2)(A)(iii). By submitting the

victims' claimed jewelry loss amount, the government has fulfilled its burden to provide a reasonable estimate of the value of the property stolen and transported.

The defense also contends that the government has not presented evidence that Mr. Verdugo transported in interstate commerce all of the jewelry stolen on December 22, 2009. The court finds, however, that the government has also adequately proven that the restitution amount is directly related to, and derived from, Mr. Verdugo's crime of conviction, the interstate transportation of property stolen by Mr. Verdugo's co-defendants on December 22, 2009. Mr. Verdugo pled guilty to transporting jewelry, sports memorabilia, and other property on December 22, 2009, the date the property subject to restitution was stolen. Specifically, on December 22, 2009, after the defendants robbed the victims' house, Mr. Verdugo saw his co-defendant Derrick Diaz place one or two gym bags that Mr. Verdugo knew contained stolen property into the vehicle that he and Mr. Diaz drove from Brooklyn to New Jersey. (*See* Def. Ltr. at 2-3; Def. Reply at 1.)

In light of Mr. Verdugo's plea, the restitution amount for the jewelry does not impermissibly take into account conduct outside the offense of conviction. Also in light of Mr. Verdugo's plea, the primary case he cites in his letter motion is distinguishable. *See United States v. Vilar*, 729 F.3d 62, 97

(2d Cir. 2013) (remanding the case for, *inter alia*, the recalculation of restitution because the district court had included in the restitution order the losses of people who were not victims of the defendants' criminal acts).  By contrast, in the instant case, unlike the facts in *Vilar,* Mr. Verdugo clearly transported property from the December 22, 2009 robbery.

Defendant's arguments that the jewelry the victims claim was stolen on December 22, 2009 could not have fit in the gym bags that Mr. Diaz placed in the vehicle after the robbery, or that "participants in the home invasion, besides Mr. Diaz, must have carried away property that evening," are also unavailing.  (*See* Def. Mot. at 3.)  Having viewed the list of jewelry stolen, the court finds by a preponderance of the evidence that all of the stolen jewelry was secreted in one or two gym bags.  Moreover, uncontroverted facts in the Pre-Sentence Report indicate that Mr. Verdugo and his co-defendants met immediately following the robbery but did not divide the proceeds of the robbery until a later time.  (PSR ¶ 7.)

For the foregoing reasons, the court finds that a total restitution amount of $159,580.36 (consisting of jewelry with a value of $117,532.69 and other property with a value of

$42,047.67) is supported by a preponderance of the evidence.
Accordingly, defendant's motion is denied, and the previously entered Judgment of Conviction remains in place.

**SO ORDERED.**

Dated:     May 22, 2014
           Brooklyn, New York
                                      _____/s/_____
                                      Kiyo A. Matsumoto
                                      United States District Judge
                                      Eastern District of New York